UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>F5 NETWORKS, INC.,<br><br>　　　　　　Defendant. | No. 2:20-cv-1878-BJR<br>No. 2:21-cv-124-BJR<br>No. 2:21-cv-125-BJR<br>No. 2:21-cv-126-BJR<br><br>ORDER ON DISCOVERY DISPUTES AND MOTION TO MODIFY CASE SCHEDULE |

Before the Court are a number of pending matters relating to discovery in these consolidated cases relating to discovery. The matters include: (1) written submissions by the parties on various discovery disputes (Dkt. Nos. 149 and 156); (2) Plaintiff's motion to modify the case schedule (Dkt. No. 171); (3) Plaintiff's motion to compel (Dkt. No. 178); (4) Defendant's motion to compel (Dkt. No. 163); (5) Plaintiff's motion for leave to amend its infringement contentions (Dkt. No. 143); (6) Plaintiff's motion for leave to supplement the amendments to its infringement contentions (Dkt. No. 166; and (7) several motions to seal materials filed in connection with these motions (Dkt. Nos. 173, 177, 184, 191, 208, 212, 215).

**I.　　BACKGROUND ON DISCOVERY DISPUTES**

On September 30, 2021, the Court held a teleconference with the parties to discuss their voluminous, never-ending discovery disputes. Dkt. No. 83 (transcript of hearing). The following day, the Court issued a minute order that memorialized the Court's rulings as follows:

> Defendant is directed to make a document production in response to Plaintiff's document requests and interrogatories by October 15, 2021. **The production shall be limited to those documents relevant to the Accused Products, as defined in Plaintiff's document requests and interrogatories, and shall include all documents relevant to said Accused**

1

**Products. The production need not, at this time, extend to other related products**. Defendant has agreed to provide the names of persons with relevant knowledge who will be available for depositions. The parties shall meet and confer on October 4, 2021 at a mutually agreeable time to discuss any remaining issues . . . .

Dkt. No. 76 (emphasis added).

The transcript of the hearing indicates that the Court told Plaintiff's counsel that its discovery requests were "clearly overbroad" and that Plaintiff could not seek discovery about "related products," but had to be specific as to how the discovery requirements were relevant to the accused products. Dkt. No. 83 at 19.

To say the parties continued to have ongoing disagreements about discovery is a mastery of understatement. On November 4, 2021, the Court issued a minute order declining to set another hearing related to discovery, noting that Defendant was still in the process of producing documents and making individuals available for depositions. Dkt. No. 85. The Court indicated that it "expect[ed] the parties to continue to engage in good faith discussions and attempt to resolve their disagreements without Court intervention" and directed the parties to file a joint status report, no longer than five pages, describing their remaining disputes. *Id.* The parties filed their joint status report on November 17, 2021.[1] On December 20, 2021, the parties filed an amended joint status report with additional disputes that had arisen. Dkt. No. 114.

On February 8, 2022, the Court issued a minute order directing the parties to provide written submissions consolidating the discovery disputes that were pending at the time. Dkt. No. 140. Plaintiff filed its submission on February 14, 2022 (Dkt. Nos. 148, 149), and attached a declaration and exhibits totaling 276 pages (Dkt. No. 151). Defendant filed its response on February 18, 2022

---

[1] In keeping with their practice of increasing the volume and complexity of their discovery issues, the parties' joint status report was single-spaced rather than double-spaced, which effectively doubled the length of the document that the Court expected. Dkt. No. 97.

(Dkt. Nos. 156, 157) and attached a declaration and exhibits totaling 69 pages (Dkt. No. 155). The parties' written submissions also cross-reference many previously filed documents and hearings. Shortly thereafter, each party filed separate motions to compel covering the same or similar issues. Dkt. Nos. 163, 178.

## II.     LEGAL STANDARD

In determining whether to grant or deny the requested discovery, the Court looks to the law of the Ninth Circuit rather than the law of the Federal Circuit. *See, e.g., Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009) (noting that a district court's ruling on denial of discovery is an issue not unique to patent law and is governed by the law of the district court's regional circuit); *Dorf & Stanton Commc'ns, Inc. v. Molson Breweries*, 100 F.3d 919 (Fed. Cir. 1996) (noting that orders compelling discovery are not unique to patent law, and therefore the law of the regional circuit law applies).

"Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance. In turn the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining, and supporting its objections with competent evidence." *U.S. v. McGraw-Hill Cos.*, 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) (citations and internal quotation marks omitted).

## III.     DISCUSSION

**A.     Plaintiff's Discovery Requests**

Plaintiff's written submission requests that the Court compel Defendant to produce discovery on a wide range of issues. The Court addresses each issue in turn below.

1. ***Discovery on the Components the Accused Products Used to Achieve Their Accused Functionalities and on Virtual and Cloud Editions of F5's BIG-IP and VIPRION Platforms***

Plaintiff requests that the Court compel discovery on "the full scope of accused products, including, but not limited to, producing source code and other responsive documents and information and designating 30(b)(6) witnesses to testify about (1) components that the accused products use to achieve their accused functionalities, including TMOS, iRules, Analytics, iApps, iControl, iCall, Container Connector, iQuery, Big-IP Monitors and MRF; and (2) virtual and cloud editions of F5's BIG-IP and VIPRION platforms." Dkt. No. 149 at 7. Defendant responds that Plaintiff is improperly seeking discovery on products that were not accused of infringement under Plaintiff's preliminary infringement contentions.

These discovery requests are closely intertwined with Plaintiff's motions to amend its infringement contentions, which seek to add these same products to the list of accused products. The Court will consolidate ruling on this aspect of the parties' discovery dispute with the Court's ruling on Plaintiff's motions to amend.

2. ***F5's Production of Source Code***

Plaintiff offers numerous complaints about Defendant's production of source code. Specifically, Plaintiff maintains:

- Defendant "has not produced any source code for the following software features that the accused products use to achieve their accused functionalities, even though all were identified in WSOU's PICs [Preliminary Infringement Contentions]: traffic detection function (TDF), content injection, logging (IPFIX, syslog, HSL), or BIG-IP Video Delivery Optimization, and the software that is preinstalled in BIG-IP and Viprion." Dkt. No. 149 at 7.

- Defendant has not produced the source code for "BIG-IP- Acceleration." *Id.*

4

- Defendant's production of source code for the accused SDC product was incomplete. *Id.*

- Plaintiff maintains that it "cannot be sure" whether the source code that Defendant produced for "Gx, By, and Ds interfaces, PCRF, TDF, QOSMOS, and CEC is complete. *Id.*

In response, Defendant argues:

- It is not withholding any SDC source code, and "in the unlikely event that additional SDC source code is located for any of the identified function," it will produce such information. Dkt. No. 156 at 11.

- It has produced any source code it possesses related to OSC, Gx, By, and Sd Interfaces, PCFR, TDF, QOSMOS, and CEC. *Id.*

- Plaintiff is "not entitled to source code related to TMOS, iRules, Analytics, iApps, iControl, iCall, Container Connector, etc." *Id.* Defendant argues that "these items for base code similar to an 'operating system'" and that Plaintiff "has not accused the 'operating system' of infringement, nor has it alleged that any of these features specifically result in the accused functionality." *Id.* Defendant maintains that Plaintiff's request for this source code "far exceeds the requirements of Rule 26." *Id.*

The Court declines to compel Defendant to produce additional source code. It appears that Plaintiff has received sufficient source code to support its case, and compelling Defendant to produce more would be unnecessarily burdensome and disproportionate to the needs of the case.

   3. ***F5's Production of Financial, Business, Marketing, Consumer Demand, and Competitive Products***

Plaintiff raises several complaints about Defendant's production of documents. According to Plaintiff, Defendant has failed or refused to produce:

5

- A product key to determine which ordered items line up with the accused products and functions;
- Quantities for BIP-IP iSeries and VIPRION (hardware, virtual or cloud) in the summary information;
- Information for BIP-IP Centralized Management IQ and Virtual Clustered Multiprocessing modules;
- Maintenance, service, license, subscription, installation, training, repair monitoring, and consulting fees segregated amongst the specific accused products (*e.g.*, for PEM's real-time credit and quota management (*i.e.*, real-time billing); and,
- The number of users, licenses, subscriptions per year for each accused product.
- Defendant has "generally" not produced these types of business documents for the SDC (i.e., the Traffix Signaling Delivery Controller).
- The business documents produced so far do not span the majority of the damages period.
- Defendant has refused to produce marketing presentations, brochures, consumer surveys, customer demand documents (RFIs, RFPs, and responses thereto) for the accused products for the damages period.  Plaintiffs complain more particularly that Defendant has stated that it is withholding some RFIs/RFPs because of confidentiality.
- Defendant refuses to produce analyses and presentations of competitor's products for the accused products for the damages period.

Defendant contends that the production demanded by Plaintiff would be burdensome far beyond any value the information might have to Plaintiff's case.

Plaintiff's written submission does not include any explanation regarding the relevance of these materials. The Court agrees with Defendant that these materials are of minimal relevance and that the burden of producing the requested documents would be totally disproportionate to the needs of the case. The Court therefore declines to compel Defendant to produce this information.

### 4. *WSOU's Second Set of Document Requests*

Plaintiff requests responses to its "extremely focused" second set of document requests. Defendant indicates that it is responding on a rolling basis to these requests, which it characterizes as 64 "very broad" requests for production. Dkt. No. 156 at 12. The Court declines to compel Defendant to produce additional documents responsive to Plaintiff's second set of requests absent a specific showing by Plaintiff of relevant documents that have been withheld.

### 5. *F5's Refusal to Disclose Its Search Terms and Procedures*

Plaintiff requests that the Court order Defendant to "disclose the search terms and identify the repositories it searched" in identifying responsive documents to produce in these actions. Dkt. No. 149 at 11. Plaintiff argues that the Model ESI Order for the U.S. District Court for the Western District of Washington "requires that parties exchange such information as a matter of course." *Id.*

Defendant notes that Plaintiff's specific request is for Defendant to disclose "the steps taken to search for, collect, identify, and produce responsive discovery (including documents, source code, interrogatory responses, and other discovery requests in these actions," along with 12 subparts requesting specific details of Defendant's investigation. Dkt. No. 156 at 9-10. Defendant also notes that the parties never agreed to the terms of the Model ESI Order for this Court, and argues that it would be improper to order Defendant to retrospectively disclose searches already conducted.

The Court agrees with Defendant. The cases cited by the parties suggest that it is inappropriate to order a party to retrospectively disclose how it conducted searches for responsive information. *See, e.g.*, *Romero v. Allstate Ins. CO.*, 271 F.R.D. 96, 110 (E.D. Pa. 2010) (declining

to order defendant to compel a retrospective disclosure of searches already conducted during the course of discovery). The better practice would have been for the parties to have conferred and agreed upon search terms and repositories to be searched at the outset of discovery, rather than seeking retrospective disclosure after discovery has already been conducted.

### 6. *F5's Refusal to Respond or to Supplement Interrogatories*

Plaintiff requests that the Court order Defendant to supplement its responses to Common Interrogatory No. 3 and to Specific Interrogatories Nos. 1, 3, 4, and 5. In response, Defendant indicates that it already supplemented responses to some of these interrogatories and would supplement its responses to the remaining interrogatories by March 1, 2022. The Court will not order Defendant to supplement its responses to those interrogatories.

Plaintiff also complains that Defendant has refused to respond to its second set of case-specific interrogatories, based on Defendant's view that these interrogatories exceed the limits agreed to by the parties. In the parties' joint status report dated March 5, 2021, the parties agreed to certain limitations on discovery to govern all five[2] cases that Plaintiff had filed against Defendant. Dkt. No. 59 at 5-7. The parties agreed to "15 common interrogatories per side" and "25 case-specific interrogatories per side." *Id.* at 5-6. Plaintiff maintains that this language allowing "25 case-specific interrogatories per side" means that each side could propound 25 interrogatories in each of the five cases for total of 125 interrogatories, while Defendant maintains that this language was meant to allow only 25 "case-specific" interrogatories across the five cases.

Defendant's interpretation makes sense, while Plaintiff's does not. The parties' joint status report of March 5, 2021, indicated that they agreed to "the following *limitations* on discovery." *Id.* at 5. This language regarding "limitations on discovery" was immediately followed by the disputed

---

[2] Since that time, one of the five cases has been dismissed.

language agreeing to "15 common interrogatories per side" and "25 case-specific interrogatories per side." *Id.* at 5-6 (emphasis added). Federal Rule of Civil Procedure 33(a)(1) already limits parties to 25 interrogatories in an individual case. It would make little sense for the parties to agree to a "limit" of 25 interrogatories per side in each of the five cases, given that Rule 33(a)(1) already establishes a limit of 25 interrogatories for each of those cases. The Court therefore concludes that the parties' agreed-upon limit of "25 case-specific interrogatories" means that each side may propound no more than 25 interrogatories <u>across</u> the five cases that seek information relevant to a specific case, while the provision allowing "15 common interrogatories per side" means a limit of 15 total interrogatories seeking information that is common to all five cases.

    *7.*    *F5's Identification of Fact Witnesses*

In both its consolidated discovery brief and its motion to compel, Plaintiff complains that Defendant's witnesses were unprepared to speak on particular subjects during their depositions. Dkt. 180. Defendant argues that its witnesses were properly prepared but that Plaintiff's counsel often failed to properly question the witnesses to obtain the relevant information.

Having reviewed the materials cited by the parties, the Court agrees with Defendant and declines to order any further depositions or to allocate any additional time to Plaintiff for taking depositions. It appears that Defendant offered replacement witnesses and tried to accommodate Plaintiff's demands. *See* Dkt. 189. Several replacement witnesses were indeed deposed. *See id.* at 2. The Court is not convinced that Plaintiff has acted diligently in attempting to obtain the information it needs. Plaintiff's requests for further depositions and its motion to compel are denied.

B.  **Defendant's Discovery Requests**

   *1.   WSOU's Production of Information About Its Patent Portfolio*

Defendant argues that Plaintiff must produce more information about Plaintiff's patent portfolio. Defendant asserts that Plaintiff "is withholding documents and prior testimony about its patent portfolio, including WSOU's patent and target analysis, documents related to the patent purchase agreement with Nokia, and witness testimony from related litigations regarding the same portfolio." Dkt. No. 156 at 4. Defendant argues that this information "is responsive to at least RFP Nos. 8, 9, 10, 13, 32, 34, 35, 36, 51, and 52" and complains that Plaintiff failed to respond to an email requesting a meet and confer on this issue. *Id.* Defendant argues that portfolio information is relevant to its "defensive damages case." Dkt. No. 156 at 1.

Plaintiff maintains that its patent portfolio contains approximately 10,000 patents and argues that Defendant's request to produce deposition transcripts relating to unrelated patents and unrelated products should be denied.

The Court declines to order Plaintiff to produce additional information about its patent portfolio. Defendant has not established sufficient relevance to warrant the Court compelling such a massive request.

   *2.   WSOU's Production of Business and Financial Information*

Defendant argues that Plaintiff's production has been deficient in the areas of: (1) documents showing Plaintiff's formation and organization; (2) Plaintiff's business and marketing materials; and (3) Plaintiff's financial information and damages contentions.

The Court finds that Defendant has not shown the relevance of these materials. The Court therefore denies Defendant's request to compel their production.

### 3. *WSOU's Withholding of Documents on the Basis of Privilege*

Defendant requests that the Court compel Plaintiff to produce any documents it is withholding on the basis of privilege, despite Plaintiff's denying that it is withholding such documents. Defendant's suspicion is based on a deposition in which one of Plaintiff's witnesses declined to answer a question about legal advice that he provided in connection with this litigation and documents he created reflecting that advice.

The Court denies Defendant's request. Defendant has not produced any convincing evidence that Plaintiff is withholding privileged documents, and the Court cannot order Plaintiff to produce documents that Plaintiff maintains do not exist. Of course, if Plaintiff is later found to have misrepresented the documents in its possession, it will be subject to severe sanctions.

### C. Plaintiff's Motion to Modify the Case Schedule

Given that the Court has denied all requests to compel additional discovery, Plaintiff's motion to modify the case schedule is denied. Discovery in this case is closed.

### D. Motions to Seal

The parties have moved to seal several documents. Finding good cause based on the confidential and sensitive information of the materials, the Court grants the parties' motions to seal.

### E. Defendant's Motion to Compel

Defendants filed a motion to compel on March 7, 2022. Dkt. 163. By minute entry dated March 11, the Court indicated that it considered Defendant's motion duplicative of Defendant's prior written submissions and directed Plaintiff not to respond. Dkt. 169. The court hereby strikes Defendant's motion.

## IV. CONCLUSION

The Court hereby ORDERS as follows:

(1) The Court's rulings on the written submissions filed by the parties on discovery disputes (Dkt. Nos. 149 and 156) are set forth in the order above.

(2) The Court denies Plaintiff's motion to modify case schedule (Dkt. No. 171).

(3) The Court denies Plaintiff's motion to compel (Dkt. No. 178);

(4) The Court strikes Defendants' motion to compel (Dkt. No. 163) as duplicative of its prior written submission at Dkt. No. 156.

(5) The Court grants all of the parties' motions to seal in each of the four related cases.

DATED this 27th day of June, 2022.

*Barbara J. Rothstein*

BARBARA J. ROTHSTEIN
United States District Judge